**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **Lydia Mack,**<br><br>*Plaintiff*,<br><br>v.<br><br>**National Credit Systems, Inc.,**<br><br>*Defendants*. | Case No. _____<br><br>Ad Damnum: **$3,000 plus Fees & Costs**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Lydia Mack** ("**Ms. Mack**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **National Credit Systems, Inc.** ("**NCS**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Mack against NCS for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**") and the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction for the Plaintiff's FDCPA claims arises under the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as the FDCPA is a federal statute.

3. Subject matter jurisdiction for Plaintiff's FCRA claims arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

4. NCS is subject to the provisions of the FDCPA and the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and Section 48.193, Florida Statutes.

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Mack

6. **Ms. Mack** is a natural person who resided in the city of Lakeland, Polk County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3) and the FCRA, 15 U.S.C. § 1681a(c).

### NCS

7. **NCS** is a Georgia corporation, with a principal business address of 3750 Naturally Fresh Blvd., Atlanta, GA 30349.

8. NCS is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9. NCS is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation, holding license number **CCA0900180**. **SEE PLAINTIFF'S EXHIBIT A.**

10. NCS is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), in that it uses an instrumentality of commerce, including postal mail, interstate

and within the state of Florida, for their businesses, the principle purposes of which are the collection of debts, and / or it regularly collects, directly or indirectly, debts owed or due or asserted to be owed or due to another.

## FACTUAL ALLEGATIONS

### The "Debt"

11. Prior to September 2013, Ms. Mack rented an apartment for her personal use from Indigo West Apartments ("**Indigo West**").

12. Around September 2013, Ms. Mack vacated the premises.

13. Indigo West later claimed that Ms. Mack owed $3,223 for early termination fees, rent, and related charges ("the Debt").

14. Ms. Mack disputes owing the Debt.

15. The alleged Debt arose from expenses incurred for personal, family or household purposes, specifically personal living expenses, and thus meets the definition of *Debt* found in the FDCPA, 15 U.S.C. § 1692a(5).

16. Around December 2013, Indigo West assigned or otherwise transferred the Debt to NCS for collection.

17. In or around April 2014, NCS, in an effort to collect the Debt, began reporting the Debt to various *Consumer Credit Reporting Agencies* ("**CRAs**"), including Equifax, Experian, and Trans Union.

18. NCS reported an alleged balance of $3,223 owed to Indigo West, under NCS account number 2857783. **SEE PLAINTIFF'S EXHIBIT B.**

19. However, beginning in July 2014, NCS also reported the identical $3,223 debt supposedly owed to Indigo West under NCS account number 2932564. *Id.*

20. Thus, even though Indigo West only claimed $3,223 was owed, NCS reported two collection tradelines to the CRAs, under two different account numbers.

21. NCS thus attempted to collect $6,446 – double the $3,223 supposedly owed.

22. Nearly all commercially used credit scores, including almost all versions of FICO, the most commonly-used credit scores in the country, heavily consider the raw number of negative tradelines appearing on a consumer's credit history; the higher the number, the more the consumer is adversely impacted.

23. As such, NCS' false and duplicative reporting caused unwarranted, unfair, and significant damage to Ms. Mack's credit scores.

24. Additionally, anyone reviewing Ms. Mack's credit report would believe she had two separate and distinct debts of $3,223, for a total of $6,446, when even in a light most favorable to NCS, the most Ms. Mack could possibly have owed was $3,223.

## Ms. Mack's Dispute of the Debt

25. In July 2019, Ms. Mack disputed the accuracy of NCS' reporting to Experian.

26. Ms. Mack disputed account number 2857783, stating, amongst other reasons, that the account appeared twice on her credit history.

27. Experian, in turn, sent NCS an *Automated Consumer Dispute Verification Request* ("**ACDV**") through an online system known as e-OSCAR and asked that NCS make a reasonable investigation into the dispute.

28. When responding to an ACDV through e-OSCAR, the respondent must attest that:

> "(b)y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted."

29. NCS responded to the ACDV, updating the status of the account to "disputed," but otherwise verifying that its report was accurate – including the purported $3,223 balance owed. **SEE PLAINTIFF'S EXHIBIT B.**

30. NCS failed to make a reasonable investigation into Ms. Mack's dispute. Any reasonable investigation would have determined that NCS was reporting the same debt twice, as it would be exceedingly unlikely that an individual consumer like Ms. Mack could possibly incur two different debts, for the same amount, on the same date, to the same apartment complex.

31. Ms. Mack also disputed the second iteration of the Indigo West tradeline, which NCS reported under account number 2932564.

32. Experian also sent NCS an ACDV regarding this account.

33. NCS also verified that the information it reported for the second account was accurate.

34. For the same reasons as aforementioned, NCS' second investigation was not reasonable.

35. Credit reporting "is powerful tool designed, in part, to wrench compliance with payment terms" from the consumer, and the "refusal to correct mistaken information

can only be seen as an attempt to tighten the screws on a nonpaying customer." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993)

36. An unsophisticated consumer would be confused, misled, and placed at a material disadvantage in charting a course of action to take regarding a

37. NCS continued making monthly reports to the CRAs, realleging the same erroneous data, and made new reports about the "two" debts, containing updated information, as recently as June 7, 2020. *Id.*

38. NCS' reports to the CRAs were communications as defined by 15 U.S.C. § 1692a(2).

39. Ms. Mack has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA -- NCS

40. Ms. Mack adopts and incorporates paragraphs 1 – 39 as if fully stated herein.

41. NCS violated **15 U.S.C. § 1692e and 1692e(10)** when it used *false representations and deceptive means* in connection with the collection of a consumer debt by reporting a singular $3,223 debt as two different, distinct debts, causing unfair and unjustified damage to Ms. Mack's credit reports and scores, and thus claiming that $6,446 was owed when only half this amount was ever alleged as owed by Indigo West. NCS then verified this false information as accurate when disputed, and re-reported the false data monthly to the CRAs thereafter.

42. NCS violated **15 U.S.C. § 1692e2(a)** when it made a *false representation of the character, amount, or legal status of a debt* in connection with the collection of a consumer debt by claiming, via credit reporting, a singular $3,223 debt as two different, distinct debts, and scores, and thus claiming $6,446 was owed when only half this amount was ever alleged as owed by Indigo West.

43. NCS violated **15 U.S.C. § 1692e(8)** when it *communicated credit information which was known to be false*, or should have been known to be false, in its reports to the CRAs, specifically that $6,446 was legitimately owed to Indigo West, when, at best, $3,223 was, and that two different and distinct debts existed, when only one did.

44. NCS violated **15 U.S.C. § 1692f** when it used *unfair means to collect a debt* by reporting a singular $3,223 debt as two different, distinct debts, causing unfair and unjustified damage to Ms. Mack's credit reports and scores, and thus claiming $6,446 was owed when only half this amount was ever alleged as owed by Indigo West.

45. As a result of the foregoing violations of the FDCPA, Ms. Mack is entitled to statutory damages and recovery of her attorneys' fees and expenses.

**WHEREFORE**, Ms. Mack respectfully requests this Honorable Court to enter judgment in her favor and against NCS as follows:

a. Statutory damages of **$1,000.00** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Unspecified actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA

46. Ms. Mack adopts and incorporates paragraphs 1 – 39 as if fully stated herein.

47. NCS violated **15 U.S.C. § 1681s-2(b)** by twice *failing to make a reasonable reinvestigation after receiving notice of dispute from a CRA*, Experian, since it verified that two different debts of $3,223 owed to Indigo West existed, totaling $6,446, when Indigo West, the original creditor, had only ever alleged one debt of $3,223 was owed.

48. NCS violated **15 U.S.C. § 1681s-2(b)** by failing to update, modify, or correct its reports after receiving notice of dispute from a CRA, Experian, when it confirmed its reports were accurate.

49. NCS' conduct renders it liable under the FCRA to Ms. Mack in a statutory amount up to $1,000 *per incident*, as well as for other damages provided under the statute.

**WHEREFORE,** Ms. Mack respectfully requests this Honorable Court to enter judgment in her favor and against NCS as follows:

a. The greater of Ms. Mack' actual damages or statutory damages of $1,000 per incident (for a total of **$2,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(A), 15 U.S.C. § 1681n(a)(1)(B) and / or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3),

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Mack hereby demands a jury trial on all issues so triable.

Respectfully submitted on June 19, 2020 by:

        **SERAPH LEGAL, P. A.**

        /s/ *Bryan J. Geiger*
        Bryan J. Geiger, Esq.
        Florida Bar No.: 119168
        BGeiger@seraphlegal.com
        2002 E. 5th Avenue, Suite 104
        Tampa, FL 33605
        Tel: 813-567-1230
        Fax: 855-500-0705
        Attorneys for Plaintiff

**Exhibit List**
A    NCS' CCA License Record
B    Ms. Mack's Experian Consumer Disclosure, June 9, 2020, Excerpt